AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
District of South Dakota

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| Apartment, hotel room, storage units, and vehicles ) | Case No. 5:19-mj- 145 |
| connected to Edward Martin and Sara Skinner, more ) | |
| fully described in Attachment A, attached hereto and ) | |
| incorporated by reference. ) | |
| ) | |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __South Dakota__ *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, attached hereto and incorporated by reference

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before __December 25, 2019__ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Daneta Wollmann__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30).*   ☐ until, the facts justifying, the later specific date of _____.

☒ I find that good cause has been established to authorize the officer executing this warrant to not provide notice prior to the execution of the search warrant, i.e., "no knock".

Date and time issued: __December 11, 2019__        _____
                                                                                        *Judge's signature*

City and state:   __Rapid City, SD__        __Daneta Wollmann, U.S. Magistrate__
                                                                          *Printed name and title*

CC: AUSA Rich

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>5:19-mj- 145 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

for the
District of South Dakota
Western Division

|   |   |
|---|---|
| In the Matter of the Search of: | ) |
| | ) |
| Apartment, hotel room, storage units, and vehicles | ) |
| connected to Edward Martin and Sara Skinner, more | ) |
| fully described in Attachment A, attached hereto and | ) |
| incorporated by reference. | ) |

Case No. 5:19-mj- 145

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, which is attached to and incorporated in this Application and Affidavit

located in the District of _____ South Dakota _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See **ATTACHMENT B**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Conspiracy to Distribute Controlled Substance |

The application is based on these facts:

**X** Continued on the attached affidavit, which is incorporated by reference.
☒ Your applicant requests that no notice be given prior to the execution of the search warrant, i.e., "no knock", the basis of which is set forth in the attached affidavit.
☒ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

Riley J. Cook, ATF Special Agent
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: ___December 11, 2019_____

_____
*Judge's signature*

City and state: __Rapid City, SD_____

_____Daneta Wollmann, U.S. Magistrate_____
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The premises, residence, vehicles, and surrounding curtilage belonging to Sara SKINNER located at 706 Taylor Avenue, Apartment #2, Rapid City, SD 57701. The structure is a multi-family unit. Apartment #2 is on the ground-level with a south facing door. The number '2' can be observed to the right (east) of the entry door.



The hotel room of Edward MARTIN at the Econo-Lodge located at 625 East Disk Drive, Room #326.



3

Rapid City Self Storage located at 2000 Seger Drive, Unit #74, Rapid City, SD 57701. The unit is an end unit with the number '74' clearly displayed in the middle of the large white garage door.



Rapid City Self Storage located at 2280 Seger Drive, Unit #281, Rapid City, SD 57701. The unit is found between unit 280 and 282 with the number '281' clearly displayed in the upper-corner near the entrance door.



4

The 2008 Red Ford Escape bearing SD License Plate Number 2V7098 and registered to Sara SKINNER.



**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED**

The evidence, fruits, and or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, particularly the following:

1.    All controlled substances.

2.    Books, records, receipts, notes, ledgers, photographs and other papers relating to the importation, transportation, ordering, purchase and distribution of controlled substances.

3.    All items determined to have been used or likely to be used for the packaging, weighing, transportation, shipping, use, distribution, storage, or processing of any controlled substance, including safes.

4.    Vessels, implements and furniture used in connection with the manufacture, production, storage or dispensing of such drugs together with articles of personal property tending to establish the identity of the person(s) in control of contraband related paraphernalia.

5.    All U.S. or foreign currency, or other forms of monetary instruments, or other financial commodities including precious metals, or other negotiable instruments, including re-fillable debit cards and receipts indicating the sending or possession of such cards.

6.    Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.

7.    Indications of occupancy, residency, and/or ownership of the premises described herein, including but not limited to utility and telephone bills, envelopes, rent receipts, repair bills, credit cards receipts, keys and articles of clothing.

8.    Vehicle titles, registrations and other paperwork tending to show the identification of ownership and/or controlling parties of vehicles.

9.    All contact lists, ledgers, calendars, notes, spreadsheets, diaries, contact information and appointment books to identify conspirators, customers, enforcers, or suppliers potentially involved in violating  21 U.S.C. §§ 841(a)(1) and 846.

10.   Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders, cashier's checks, receipts, passbooks, bank checks, safe deposit box keys, storage locker keys, and other items of evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money. This is meant to

include any record reflecting the rental of a storage locker, rental facility, or other property, including hotel rooms, in which controlled substances could be stored.

11. Firearms, ammunition, paraphernalia associated with the possession and/or use of firearms, including but not limited to holsters, cases, or receipts indicating the purchase or sale of such items.

12. Call history information on the landline phone for the residence, to include the playing and recording of any messages left on any telephone answering device located on the premises.

13. Surveillance devices, cameras, etc. installed at the location described in Attachment A.

14. Cell phones, tablets, and computers capable of being used to facilitate or document the distribution, sales, trafficking, or possession of controlled substances along with any and all information contained on these devices to include, but not limited to:

    a. Text messages;
    b. Telephone lists and call logs;
    c. All contact information, names, aliases, and telephone numbers stored in the phone, including any telephone number directory stored in the memory of the phone;
    d. The content of any and all voicemail messages;
    e. Browser history, including, but not limited to, "bookmarked" or favorite web sites and search terms entered into internet search engines;
    f. Email messages;
    g. Deleted data, receipts, notes, ledgers, and other information relating to the possession, sale and transfer of controlled substances;
    h. All images, photographs and videos;
    i. Any and all records, showing dominion, ownership, custody, or control over the phone.

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: Apartment, hotel room, storage units, and vehicles connected to Edward Martin and Sara Skinner, more fully described in Attachment A, attached hereto and incorporated by reference. | Case No. 5:19-mj- 145 <br><br> AFFIDAVIT IN SUPPORT OF SEARCH WARRANT |

STATE OF SOUTH DAKOTA )
                       )
COUNTY OF PENNINGTON   )

I, Riley J. Cook, Special Agent with Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

## **INTRODUCTION AND AGENT BACKGROUND**

1.     I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Rapid City Satellite Office. I have been employed by the ATF since July, 2014. Prior to ATF, I was employed as a Special Agent with the South Dakota Division of Criminal Investigation where I was assigned to investigate felony crimes including, but not limited to, narcotics trafficking and other types of violent crime. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC"). I have also completed ATF Special Agent Basic Training course. While attending the academies at FLETC in Glynco, Georgia, I received specialized training concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the National Firearms Act within Title 26 of the United States Code.

2.     As a law enforcement officer, I have participated in numerous federal and state investigations involving the sale, possession, and trafficking of firearms and/or controlled substances.   Through my participation in these investigations, I have debriefed numerous defendants, informants, confidential sources, and witnesses who had personal knowledge regarding firearms and/or narcotics trafficking.  I have also participated in undercover operations, conducted physical and electronic surveillance, used informants, seized firearms and narcotics, executed search warrants, and made arrests.

3.     Based on my training and experience, I am aware that drug traffickers often use mail carriers (UPS, FedEx, USPS) to ship/receive illegal narcotics and to exchange funds for the purchase of additional narcotics.  The funds are commonly in the form of U.S. currency.  I am also aware that drug traffickers often use expedited mailing services, which provide real-time tracking to anticipate and verify delivery.

4.     Based on my training and experience, I am aware individuals involved in illegal activities such as the one described above will commonly have other illegal items possessed within their property, vehicles, residence, storage units, and etc.

5.     Based on my training and experience, I know that individuals involved with illegal activity, such as the distribution of illegal drugs or the trafficking of firearms, will often store the contraband away from their primary residence, such as trap houses or a rented storage unit, in effort to avoid detection from law enforcement.

6.     Based on my training and experience, I know that persons involved in the distribution of controlled substances often keep records that include names and

2

telephone numbers of drug customers, suppliers, and other co-conspirators. Additionally, persons involved in the distribution of controlled substances, often have books, records, receipts, notes, ledgers, and other papers related to the transportation, ordering, purchase, sale and distribution of controlled substances. Additionally, persons involved in the distribution of controlled substances often have lists of persons who may owe debts or money to distributors for drugs that are fronted to individuals. In the drug subculture, the term "fronted" means giving someone drugs up front and having to repay the person later. I am aware that individuals involved with the distribution of controlled substances communicate through multiple medias, including telephone calls, text messages, emails, and Facebook messages. I am further aware that persons involved in the distribution of controlled substances meet with purchasers at various locations, and the data of the locations visited may be stored on a GPS device.

7. Based on my training and experience as a law enforcement officer, I know that persons involved with the distribution of controlled substance will often have amounts of U.S. currency stored, secreted, or hidden on their person, in their vehicles, or in their residence and curtilage. Often they will store their currency on their person, or in other places, which includes other residences. They do these things in order to avoid detection by law enforcement or to protect what money they have, or to avoid being burglarized or robbed by persons involved in the drug subculture.

8. Based on my training, knowledge and experience as a law enforcement officer, I know that persons involved with the distribution of controlled substances will

3

possess firearms, stored, secreted, or hidden on their person, in their vehicles, or in their residence and curtilage. They do these things in furtherance of narcotics trafficking or distribution, and for protection.

9.      Based on my training, experience, and participation in illegal firearms investigations to include, but not limited to, manufacturing and sales, violent crimes, and prohibited persons in possession of firearms, I have learned that persons prohibited from possessing firearms and/or ammunition gain access to firearms and/or ammunition through illegal means including utilizing straw purchasers, purchasing firearms on the "black market," stealing firearms, utilizing the internet to arrange private firearm sales, and bartering narcotics in exchange for firearms and/or ammunition. Persons prohibited from possessing firearms and/or ammunition hold onto and maintain possession of their illegally acquired firearms and/or ammunition because of the extra efforts expended and the premiums paid when getting access to firearms and/or ammunition. Persons prohibited from possession of firearms and/or ammunition maintain their firearms and/or ammunition in their homes and vehicles to allow for easy access to the firearms and/or ammunition and to maintain possession of the firearms and/or ammunition in a secure area.

10.     Based on my training and experience, I know that there will be evidence of the individual's exercise of dominion and control over the firearms and/or ammunition in the immediate area where individuals store their firearms and ammunition. For example, if a firearm and/or ammunition were stored in a particular drawer, the drawer would also routinely contain items such as documents, cards, letters, photographs,

4

and physical objects such as articles of clothing that will identify the specific individual or individuals that exercise dominion and control over the particular area.

11.    Based on my training, knowledge and experience as a law enforcement officer, I know that persons involved in the distribution of controlled substances often have photographs and/or home videotapes in particular of co-conspirators, assets, and/or controlled substances.  I have been involved in drug investigations where photographs and/or videotapes have been found during search warrants.   These photographs and/or videotapes have shown persons smoking, using, or ingesting, as well as persons displaying their drugs and/or cash.

12.    Based upon my training and experience, I am aware that individuals use a variety of mobile devices to coordinate drug sales and purchases.  I am further aware that mobile devices are a variety of sizes and may be on someone's person.  I am aware that these devices can be valuable and that people often keep mobile devices in safe locations, including locations that are easily accessible to them, on their person, in their residence, or within their vehicle.

13.    Based upon my training and experience, I know that computer hardware and electronic files may be important to a criminal drug investigation in that they may be used to coordinate drug sales or purchases, to manage the records of a drug trafficking organization, or to store images or video that may be evidence of ingestion, possession, or distribution of controlled substances.  The warrant application in this case requests permission to seize computer and other electronic hardware and devices that may be relevant to the possession or distribution of controlled substances,

5

because they may contain files, text, images and/or video of drug-related activity. I believe that in this case, the computers, cellular phones and electronic devices and media are containers for evidence and are instrumentalities of the crime under investigation.

14. Based on my training and experience, I know that search warrants of residences usually reveal items that tend to show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

15. Based on my training and experience as a law enforcement officer, I know that persons involved with the distribution of controlled substances use scales, which include electronic, manual, hand-held, and triple beam, to weigh the product. Additionally, persons involved in the distribution of drugs often use bags, to include plastic sandwich bags, plastic and paper grocery bags, and jewelry bags, to package their controlled substances. This is packaging that is often found when persons sell small amounts of drugs in quantities of ounces to grams. Additionally, persons involved in the possession and distribution of drugs often use bowls, pipes, rolling papers and other drug-related paraphernalia for the processing, ingestion, and/or distribution of drugs.

16. Based upon my training and experience, I know that computer hardware, software, and electronic files may be important to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage

6

devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. This Affidavit also requests permission to seize all computers, cellular phones, and any other electronic media that may contain evidence of communications regarding drug matters if it becomes necessary for reasons of practicality to remove the hardware and conduct a search off site. I believe that in this case, the computers, cellular phones and electronic media are containers for evidence, containers for contraband, and also themselves are instrumentalities of the crime under investigation.

17.    I am aware that urine samples are used to conduct a urinalysis, which is a laboratory analysis of the urine. I am aware that urine can be tested for various drugs. Each drug has a time period in which it stays within the user's body. The time periods vary from one day to several days.

18.    This affidavit is based on personal knowledge that I have gained from my participation in this investigation as well as information from the following sources, among others: oral reports of other agents and officers involved in the investigation; written reports from other agents and officers; conversations with such agents and officers; and physical surveillance conducted by such agents and officers.

19.    I respectfully submit this affidavit pursuant to Rule 41 of the Federal Rules of Criminal Procedure in support of a request for a search warrant for the hotel room of Edward MARTIN at the Econo-Lodge located at 625 East Disk Drive, Room #326, Rapid City, SD 57701; the residence of Sara SKINNER located at 706 Taylor Avenue, Apartment #2, Rapid City, SD 57701; Rapid City Self Storage located at 2000 Seger

Drive, Unit #74, Rapid City, SD 57701; the 2008 Red Ford Escape bearing SD License Plate Number 2V7098; and the Person or Body of Edward MARTIN and Sara SKINNER, to include a urine sample and/or blood sample, described in Attachment A, for the items listed in Attachment B (both attachments of which are incorporated by reference herein), which are fruits, instrumentalities, and evidence in violation of the Possession with Intent to Distribute and/or Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841; and Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846. This affidavit is made for the sole purpose of demonstrating probable cause for the issuance of this search warrant and does not set forth all of my knowledge of this investigation.

## **FACTS IN SUPPORT OF PROBABLE CAUSE**

20. Beginning in September, 2019, a South Dakota Division of Criminal Investigation (DCI) Confidential Informant (CI) (CI #19-4042) identified an individual, later identified by law enforcement as Edward Lamont MARTIN, as the CI's source of methamphetamine. Prior to being signed up as a CI, the CI had been stopped by law enforcement and found in possession of methamphetamine and drug paraphernalia. The CI has a criminal history including felony convictions. The CI provided MARTIN's cell phone number to be (605)-646-8712. The CI also provided MARTIN's physical address to be 722 Myrtle Avenue, Rapid City, SD. The CI stated that MARTIN had been sourcing the CI with methamphetamine for approximately four (4) to five (5) months. MARTIN has provided the CI with ¼ pound quantities of methamphetamine on four (4) separate occasions, as well as multiple ounces quantities of methamphetamine, single

ounce quantities of methamphetamine, and ½ ounce quantities of methamphetamine throughout the time MARTIN has sourced the CI with methamphetamine.

21. The CI provided SD DCI Special Agent BJ George with a cell phone that contained a photograph of MARTIN's Nevada identification card that the CI had stored on the cell phone. The CI provided SA George with access to the cell phone in order for SA George to retrieve the photograph of MARTIN's driver's license. The CI also identified an incident in which MARTIN provided the CI with a 'MAC-10' firearm. The CI stated that MARTIN did not want to be found in possession of the firearm by law enforcement. The CI provided that the 'MAC-10' was being stored at a residence near Sturgis, SD. It should be noted that on September 2, 2019, law enforcement, with the assistance of the CI, recovered the 'MAC-10' that the CI identified was provided to the CI by MARTIN.

22. On September 2, 2019, SA George met with the CI (CI #19-4042). At that time, the CI indicated that the CI was able to purchase two (2) ounces of methamphetamine from MARTIN. SA George advised the CI to arrange the controlled purchase of methamphetamine from MARTIN. On this date, the CI met with MARTIN at the residence located at 722 Myrtle Avenue, Rapid City, SD. A female, identified by law enforcement as Sara SKINNER, was also present at the residence. A red Ford Escape bearing South Dakota license plate number 2V7098 was parked on the street directly in front of the above identified address. SKINNER is the registered owner of the red Ford Escape bearing South Dakota license plate number 2V7098. Further, it

9

was known to law enforcement that SKINNER has a history of possessing/use of a controlled substance (methamphetamine).

23. On September 2, 2019, the CI and MARTIN travelled in the CI's vehicle and followed SKINNER, who drove the red Ford Escape referenced above, to a residence located at 340 St. Andrew Street, Rapid City, SD. It should be noted that the Unified Narcotics Enforcement Team (UNET) executed a State of South Dakota search warrant at the residence located at 340 St. Andrew Street, Rapid City, SD regarding the use and distribution of heroin. Upon arrival at the residence, the CI and MARTIN waited in the CI's vehicle as SKINNER entered the residence. While waiting in the CI's vehicle, MARTIN informed the CI that MARTIN was getting one (1) pound of methamphetamine shipped to MARTIN and was expected to receive the package containing the methamphetamine on Thursday (September 5) or Friday (September 6). MARTIN informed the CI that the CI was able to purchase one (1) ounce of methamphetamine for $675.00; ¼ pound of methamphetamine for $2,700.00; or ½ pound of methamphetamine for $5,400.00. MARTIN also informed the CI that MARTIN was aware of an individual attempting to sell semi-automatic rifles.

24. When SKINNER departed the residence located at 340 St. Andrew Street, Rapid City, SD, it was determined that SKINNER was not able to provide the CI with the two (2) ounces of methamphetamine. At the time, MARTIN contacted an unknown individual via cell phone. It was then determined that MARTIN and the CI would return to 722 Myrtle Avenue, Rapid City, SD and a separate source of methamphetamine would be meeting at MARTIN's residence. When MARTIN and the CI arrived at 722

10

Myrtle Avenue, Rapid City, SD, law enforcement assisting with the controlled purchase operation observed two (2) Native American males exit a black Pontiac passenger car bearing South Dakota license plate number 2V9061. MARTIN and the two (2) unknown Native American males entered the residence at 722 Myrtle Avenue. Ultimately, the CI also entered the residence. MARTIN, the CI, and the unknown males entered a bedroom, which was identified by the CI as MARTIN's bedroom. The CI stated that MARTIN and the unknown males were weighing methamphetamine and instructed the CI to obtain baggies and weigh out two (2) ounces of methamphetamine, which the CI agreed to do. The CI provided MARTIN with documented agent cashier funds utilized to purchase illegal drugs and other contraband. The CI then departed the residence and travelled to a pre-determined location where the suspected methamphetamine was provided to SA George. The suspected methamphetamine was field tested and was presumptive positive for methamphetamine.

    25. Once the CI departed the residence, law enforcement assisting with the controlled purchase operation observed the two (2) unknown Native American males exit 722 Myrtle Avenue and enter 724 Myrtle Avenue. It should also be noted that following the controlled purchase on September 2, 2019, MARTIN contacted the CI via cell phone, which was not audio recorded. At that time, MARTIN informed the CI that the individual attempting to sell firearms had one AR-style firearm that the CI was able to purchase for $1,200.00. MARTIN informed the CI that the individual attempting to sell firearms is employed and would be available on the evening of September 3, 2019.

11

26. On September 4, 2019, SA George and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) SA Riley Cook met with the CI regarding a potential controlled purchase of firearms, which would be facilitated by MARTIN. On this date, the CI travelled to MARTIN's residence located at 722 Myrtle Avenue, Rapid City, SD. The CI made contact with MARTIN at which time MARTIN discussed supplying the CI ½ pound of methamphetamine in exchange for $5,400.00 and then providing the CI with an additional three (3) ounces of methamphetamine for $700.00. MARTIN informed the CI that the methamphetamine was shipped and would be received by MARTIN on Friday, September 6, 2019.

27. MARTIN informed the CI that the individual in possession of the firearms and attempting to sell firearms lived across the street from MARTIN. During a phone call with the individual, MARTIN referenced the source of the firearms as 'Keeler.' It was identified that Keeler STANDS resides at 723 Myrtle Avenue, Apartment #1, Rapid City, SD. MARTIN instructed the CI to return to MARTIN's residence later in the evening to purchase firearms.

28. On September 4, 2019, SA George and SA Cook met with the CI (CI #19-4042). The CI had arranged a controlled purchase of firearms facilitated by MARTIN. It was suspected STANDS was in possession of the firearms. The CI travelled to MARTIN's residence and made contact with MARTIN. The CI entered MARTIN's residence and made contact with 'Sara,' identified by the CI as Sara SKINNER. While the CI was at MARTIN's residence and waiting for STANDS arrival, SKINNER contacted

12

STANDS via cell phone and requested STANDS travel to the residence in order to complete the controlled purchase of firearms.

29.    After an extended period of time, STANDS arrived at MARTIN's residence travelling in a blue sedan bearing South Dakota license plate number 2U3907. The CI made contact with two (2) individuals that exited the blue sedan. STANDS was identified by the CI as one of the individuals who arrived in the blue sedan. STANDS also indicated that he may reside across the street from MARTIN. STANDS and the unidentified male produced two (2) firearms, later identified as a DPMS, model A-15, 5.56 caliber semi-automatic rifle (SN: DKF910340) and an Aero Precision, model SA 15, 5.56 caliber semi-automatic pistol (SN: JT015684). The CI then purchased both firearms for $1,200.00; however, it should be noted that it was agreed by STANDS to provide MARTIN with $200.00 for facilitating the controlled purchase of the firearms. The CI then provided MARTIN with $200.00 of documented agent cashier funds. The CI later identified that MARTIN provided SKINNER with $100.00 from the documented agent cashier funds provided to MARTIN. Therefore, at the time of the controlled purchase, STANDS received $1,000.00 and MARTIN received $200.00 of documented agent cashier funds from the CI. It should also be noted that the unidentified male indicated that a shotgun may also be available for purchase. In addition, STANDS also informed the CI that STANDS had methamphetamine being transported and was currently near Scottsbluff, Nebraska. STANDS indicated that he may be able to provide the CI with methamphetamine.

13

30.     On September 7, 2019, CI #19-4042 contacted SA George and advised that MARTIN had contacted the CI and indicate that the package containing the suspected methamphetamine was to be delivered on this date. Law enforcement assisting with the investigation established surveillance of the MARTIN's residence located at 722 Myrtle Avenue, Rapid City, SD. While conducting surveillance, law enforcement observed an employee with the United States Postal Service (USPS) place a package on the ground in front of 722 Myrtle Avenue, Rapid City, SD. Shortly thereafter, MARTIN advised the CI that the CI was able to purchase methamphetamine from MARTIN. The CI was advised to arrange the controlled purchase of methamphetamine from MARTIN.

31.     On September 7, 2019, the CI travelled to 722 Myrtle Avenue, Rapid City, SD. Upon arrival, the CI made contact with MARTIN and SKINNER. The CI conducted a controlled purchase of approximately ½ pound of suspected methamphetamine from MARTIN. Prior to the CI's departure from MARTIN's residence, MARTIN asked the CI if the CI would send money, via Walmart, to MARTIN's 'cousin' in Las Vegas, NV. Ultimately, the CI provided SA George three (3) bags containing a hard-crystal substance, which field tested positive for methamphetamine.

32.     On September 16, 2019, SA George was contacted by CI #19-4042 and informed that STANDS was in possession of a shotgun and the CI was able to purchase the firearm from STANDS. In addition, the CI was able to purchase four (4) ounces of methamphetamine from STANDS. The CI was advised to arrange the purchase of the firearm and methamphetamine from STANDS. The CI was to meet with STANDS at

14

STANDS' residence located at 723 Myrtle Avenue, Rapid City, SD. The CI was advised to arrange a controlled purchase of the firearm and methamphetamine from STANDS.

33.    On September 16, 2019, The CI travelled to STANDS' residence located at 723 Myrtle Avenue, Apartment #1, Rapid City, SD. Prior to the CI's arrival at STANDS' residence, law enforcement assisting with the controlled purchase operation observed MARTIN walk from STANDS' residence to MARTIN's residence located at 722 Myrtle Avenue, Rapid City, SD. Upon the CI's arrival at STANDS' residence, the CI makes contact with STANDS outside of the residence. It was determined to complete the controlled purchase of the firearm in the CI's vehicle. STANDS indicated that the four (4) ounces of methamphetamine originally discussed was not available. STANDS stated that the source of supply for the methamphetamine was his "sister's guy."

34.    The CI completed the controlled purchase of a Mossberg, model 500A, 12 gauge pump-action shotgun (SN: K960852) from STANDS. The CI provided STANDS with $500.00 of pre-recorded AC funds in exchange for the firearm. STANDS would not reduce the price of the firearm; however, STANDS agreed to reduce the price of the methamphetamine when it became available for the CI to purchase. The CI requested information regarding the AR-10 that STANDS had discussed in previous conversations with the CI. STANDS stated that the owner of the AR-10 informed STANDS that the firearm was valued at $3,500.00; however, the firearm could be purchased by the CI for one-half or one-quarter of the value of the firearm. STANDS stated that he would ask for an additional $200.00 from the CI for facilitating the purchase of the AR-10. STANDS stated that the AR-10 is bolt-action. The CI requested

15

that STANDS send the CI a picture of the AR-10. STANDS did provide the CI with a digital photograph of the AR-10. STANDS also informed the CI that STANDS was able to sell the CI an additional pump-action shotgun for $125.00. STANDS exited the CI's vehicle and entered 723 Myrtle Avenue, Apartment #1, Rapid City, SD.

35.     Following the controlled purchase of the Mossberg, model 500A, 12 gauge pump-action shotgun (SN: K960852) from STANDS, the CI went to MARTIN's residence located at 722 Myrtle Avenue. The CI made contact with MARTIN while waiting to see if STANDS was able to obtain the originally agreed upon methamphetamine. While speaking with MARTIN, MARTIN informed the CI that MARTIN needed to wire money to MARTIN's cousin as soon as possible. MARTIN informed the CI that the money needed to be wired to 'Christopher James' in Las Vegas, NV. The money needed to be sent in order for MARTIN to receive methamphetamine. The CI agreed to assist MARTIN in sending a money transfer from Walmart. Shortly thereafter, the CI contacted STANDS and was informed that the methamphetamine was not available for purchase on this date. STANDS did state that the CI would be able to purchase four (4) ounces of methamphetamine on September 17, 2019 for $500.00 less.

36.     On September 17, 2019, MARTIN informed the CI that if MARTIN was able to transfer the money to MARTIN's cousin, MARTIN would be receiving methamphetamine which could be purchased by the CI. The CI then travelled to Walmart located at 1200 N. Lacrosse Street, Rapid City, SD with MARTIN. The CI agreed to transfer the money for MARTIN and MARTIN provided the CI with $200.00 to be transferred to 'Christopher James' in Las Vegas, NV. The CI entered Walmart and

16

completed the transfer. As MARTIN and the CI travelled back to MARTIN's residence, the CI and MARTIN further discussed the cost and quantities of methamphetamine that the CI was able to purchase from MARTIN. The Mossberg, model 500A, 12 gauge pump-action shotgun (SN: K960852) was ultimately provided to ATF SA Cook. It should be noted that it was identified that 'Christopher James' resides at 6500 West Charleston Boulevard, Apartment 128, Las Vegas, NV 89146. Further, throughout the investigation, it was determined that multiple packages have been sent via the United Parcel Service (UPS) from Christopher James or known associates to MARTIN or known associates.

37. On September 17, 2019, CI #19-4042 contacted DCI SA George and advised that the CI was able to purchase ¼ pound of methamphetamine from STANDS. The controlled purchase of the suspected methamphetamine was initially agreed to occur on September 16, 2019. The CI was advised to arrange to purchase the suspected methamphetamine from STANDS. Ultimately, it was determined that STANDS and the CI would travel to Sturgis, SD in order to complete the controlled purchase of methamphetamine. The CI met with STANDS at STANDS' residence located at 723 Myrtle Avenue, Apartment #1, Rapid City, SD prior to departing to Sturgis, SD.

38. Pursuant to the investigation and information gathered by law enforcement assisting with the controlled purchase, it was determined that a black KIA with paper plates was involved with the distribution of methamphetamine with STANDS. While the CI and STANDS travelled to Sturgis, SD, it was determined that

the controlled purchase of methamphetamine would occur in the McDonald's parking lot in Sturgis. Based on information gathered throughout the controlled purchase, it was believed that the driver of the black KIA with paper plates was Tyler OLSON. STANDS stated that OLSON's brother, believed to be Mason Olson, was convicted of a conspiracy charge and currently incarcerated in Federal prison. STANDS identified the last name of the individual who is obtaining the methamphetamine on this date as 'OLSON.' STANDS discussed receiving cash from the CI for facilitating the controlled purchase from OLSON.

39. Upon arrival at McDonald's, STANDS discussed entering OSLON's vehicle when it arrived to obtain the methamphetamine and provide the methamphetamine to the CI. STANDS also discussed facilitating a robbery on an unknown individual. It should be noted that while the CI and STANDS are waiting for OLSON to arrive at McDonald's, surveillance units observed the KIA sedan at a residence in Sturgis, SD. Shortly thereafter, the KIA arrived at McDonald's.

40. Upon arrival, the driver of the KIA, identified as Tyler OLSON, made contact with the CI. The CI entered OLSON's vehicle. The CI provided OLSON with documented agent cashier funds in exchange for approximately four (4) ounces of suspected methamphetamine. OLSON informed the CI that OLSON's brother is currently incarcerated in Federal prison for a five-hundred (500) gram conspiracy. OLSON informed the CI that the CI needs to continue going through STANDS in order to purchase methamphetamine from OLSON. The CI and OLSON discuss the CI purchasing marijuana from OLSON. OLSON indicated that he was able to provide the

18

CI with half-pound and full-pound quantities of methamphetamine. Following the controlled purchase of methamphetamine from OLSON and STANDS, SA Cook and SA George met with the CI and retrieved the suspected methamphetamine, which field tested positive for methamphetamine.

41.    On September 19, 2019, SD DCI SA BJ George was contacted by CI #19-4042 and advised that MARTIN was in possession of a large quantity of methamphetamine. The CI further stated that the CI was able to purchase ½ pound of methamphetamine from MARTIN. SA George advised the CI to arrange a controlled purchase of methamphetamine from MARTIN. On this date, a controlled purchase of methamphetamine occurred from MARTIN in the parking lot of Jackpot Casino, Rapid City, SD. The CI purchased ½ pound of methamphetamine from MARTIN in exchange for documented agent cashier funds. Following the controlled purchase, the CI met with law enforcement and provided the suspected methamphetamine to DCI SA George. The suspected methamphetamine field tested positive for methamphetamine.

42.    On October 4, 2019, the Rapid City Police Department (RCPD) initiated a traffic stop with a black KIA with paper plates (dealer tag). The vehicle did not stop and accelerated at a high rate of speed. RCPD initiated a vehicle pursuit. Ultimately, the KIA maneuvered to avoid a crash with an uninvolved third-party vehicle and struck a curb. The passenger of the vehicle was immediately taken into custody. The driver of the vehicle, identified as Tyler OLSON, ran from the vehicle. OLSON's name was on the paper plates (dealer tag) located on the vehicle. RCPD utilized a K-9 to track and located OLSON, who was hiding under a semi-truck in a nearby parking lot.

43. When law enforcement approached the KIA, a firearm was observed near the driver's seat. The firearm was later identified as a Smith and Wesson, model 15-4, .38 caliber revolver (SN: 93K2660). A search incident to arrest was conducted of OLSON. At that time, a plastic container containing multiple jeweler bags were located on his person. The baggies located on OLSON's person field tested positive for methamphetamine. A purple jeweler bag was located in the passenger compartment of the vehicle that contained a white crystal substance which field tested positive for methamphetamine.

44. On October 5, 2019, RCPD were dispatched to a disturbance call in Rapid City, SD. Upon arrival, law enforcement observed a gray Ford F-150 bearing South Dakota license plate number 2J1472 departing from near the suspected location of the disturbance. A traffic stop of the vehicle was initiated. While approaching the vehicle, a RCPD Officer Holbrook heard a noise from the vehicle that he described was similar to the discharge of a starter's gun. RCPD made contact with the occupants of the vehicle. The driver was identified as Chase MCGUIRE and the passenger was identified as Keeler STANDS. While law enforcement was talking with STANDS and MCGUIRE, STANDS admitted to have unintentionally discharged a 9mm caliber pistol while attempting to disassemble the firearm. STANDS identified that the firearm was then placed under the passenger seat. STANDS stated that the round that was discharged was a blank. STANDS stated that he commonly loads the first round with a blank to serve as a "warning shot."

20

45.    Pursuant to the investigation, MCGUIRE provided law enforcement consent to search the vehicle.  MCGUIRE further provided that he was currently on Probation with the State of South Dakota.  During the search of the vehicle, the 9mm semi-automatic pistol that STANDS had discharged and dissembled was located and collected as evidence.  Law enforcement also located in the passenger compartment of the vehicle a jewelry bag containing a white reside that field tested positive for methamphetamine.  In the bed of the pickup, law enforcement identified a black back pack.  A gallon-sized plastic baggie was located in the back pack, which contained approximately fifteen (15) ounces of suspected methamphetamine.  Also located in the bed of the pickup was a black nylon case containing .223 caliber semi-automatic rifle.  Both MCGUIRE and STANDS were in possession of a large quantity of U.S. currency.  The items collected as evidence were placed in the RCPD evidence facility.

46.    On October 5, 2019, ATF SA Cook and DCI SA George conducted an interview with STANDS following the traffic stop and contact with RCPD.  STANDS stated that MCGUIRE advised STANDS to run from law enforcement when contact was initially made by RCPD.  STANDS stated that MCGUIRE was on probation and did not want STANDS to be in the vehicle while possessing a firearm.  STANDS stated that he was in possession of a firearm, which was discharged when STANDS attempted to disassemble the firearm, at the time RCPD initially made contact with the STANDS and MCGUIRE.  STANDS stated that the round that was discharged was a blank cartridge.  STANDS advised that he possessed the firearm for protection.  STANDS also stated he

21

has been arrested and convicted of a felony, but received a Suspended Execution of Sentence.

47. SA George advised STANDS that a large quantity of methamphetamine and a rifle were located in the back of the vehicle MCGUIRE and STANDS were occupying. STANDS stated that he was not aware of the methamphetamine in the vehicle. However, STANDS stated that STANDS had plans to shoot the rifle located in the vehicle and possibly purchase the firearm. STANDS stated that he was not aware that the firearm had been placed in MCGUIRE's vehicle. STANDS described the rifle that was located in the vehicle. STANDS stated that the firearm was available to be purchased for $1,000.00. STANDS stated that he last utilized methamphetamine approximately two (2) or three (3) days prior to the interview.

48. STANDS again stated that the methamphetamine located in the vehicle did not belong to STANDS. STANDS indicated that MCGUIRE may have arrived at the residence with the methamphetamine because STANDS did not observe any methamphetamine in the residence. SA George informed STANDS that law enforcement may be aware of STANDS' involvement with illegal activities. STANDS stated that he previously associated with Mason OLSON, who is currently in Federal prison for drug offenses. STANDS stated that he does have a history of using and selling methamphetamine. STANDS stated that he has also facilitated the sale of methamphetamine in the past. STANDS initially stated that he has not been associated with the sale of firearms in the recent past; however, STANDS then stated he may have been associated with the sale of firearms.

49.   STANDS stated that he and MCGUIRE have gone through approximately one-half (1/2) pound of methamphetamine in the past two days.  STANDS estimated that there was approximately 209 grams of methamphetamine in the baggie located in the vehicle occupied by STANDS and MCGUIRE.   STANDS stated that the methamphetamine in the vehicle belonged to MCGUIRE.   STANDS stated that MCGUIRE has requested STANDS and MCGUIRE purchase a pound of methamphetamine together for further distribution.

50.   STANDS stated that Sara, who lives across the street and known to law enforcement to be Sara SKINNER, has sold STANDS methamphetamine in the recent past.  STANDS stated that he has purchased a total of approximately one (1) pound of methamphetamine from SKINNER in the past month and a half.  STANDS stated that SKINNER no longer resides on Myrtle Avenue and is currently staying in hotels in Rapid City, SD.  It should be noted that pursuant to the investigation, law enforcement had identified that MARTIN and SKINNER were no longer residing at 722 Myrtle Avenue, Rapid City, SD and would frequent various hotels throughout Rapid City.

51.   STANDS identified an individual known to STANDS as 'Bones,' who is known to law enforcement to be Edward MARTIN.  STANDS has known MARTIN for approximately one (1) month.  STANDS stated that MARTIN is a 13th Street Crip from Southern California.  STANDS stated that he has received methamphetamine from MARTIN.  STANDS stated that he has distributed ten (10) to fifteen (15) pounds of methamphetamine for MARTIN.   STANDS stated that MARTIN is receiving methamphetamine through the mail. STANDS provided that MARTIN is going to receive

23

six (6) more pounds of methamphetamine through the mail in the near future. STANDS indicated that he owes MARTIN $1,350.00 for methamphetamine. STANDS stated that MARTIN may be receiving methamphetamine from a source in Las Vegas, Nevada. STANDS identified multiple addresses in Rapid City, SD that MARTIN is having methamphetamine shipped. STANDS stated that approximately three (3) weeks prior to this interview, STANDS drove MARTIN to a residence on the west side of Rapid City, SD in order to pick up a package containing methamphetamine. STANDS stated that MARTIN has provided STANDS with a 9mm pistol in the recent past.

52. STANDS stated that Tyler OLSON provided STANDS with approximately six (6) ounces of methamphetamine approximately one week prior to this interview. STANDS stated that approximately one (1) week after OLSON was released from State prison, OLSON arrived at STANDS' residence with approximately one (1) pound of methamphetamine. STANDS stated that OLSON is driving a black 2020 KIA sedan.

53. On October 15, 2019, RCPD Detective Cade Bloomenrader conducted an interview with a Source of Information (SOI #1). At that time, SOI #1 reported involvement in making trips to pick up methamphetamine from out-of-state sources, and frequent drug use by smoking methamphetamine for the past several years. SOI #1 reported that he/she, as well as Carmen DILLON and Sara SKINNER, assisted a male subject in the Rapid City area with the sale of methamphetamine. This man is nicknamed "Bones", known to law enforcement to be Edward Lamont MARTIN. SOI #1 reported that MARTIN came to Rapid City from California specifically for the purpose of selling drugs and has lived in Rapid City for approximately one (1) year.

24

54.    The SOI #1 stated that MARTIN receives shipments of illegal drugs (methamphetamine) through the mail, typically FedEx or the United Postal Service (UPS). The packages are commonly addressed to DILLON and are kept at UPS or FedEx for pickup. The SOI stated that MARTIN does not drive, but commonly rides with SKINNER in a Ford Escape. The SOI advised that MARTIN has a storage unit, later identified to be located at 2280 Seger Drive, unit #281. SOI #1 stated that MARTIN stores methamphetamine in the storage unit. SOI #1 estimated that MARTIN travels with approximately one (1) pound of methamphetamine for distribution and leaves the remainder of MARTIN's methamphetamine in the storage unit.

55.    SOI #1 stated that he/she has been assisting MARTIN in the distribution of methamphetamine for approximately two (2) months. SOI #1 estimated that he/she has received one (1) ounce of methamphetamine every other day from MARTIN, totaling approximately thirty-five (35) ounces of methamphetamine in the time SOI #1 has been dealing with MARTIN. SOI #1 estimated that both DILLON and SKINNER has also received similar quantities of methamphetamine from MARTIN. SOI #1 believed that SKINNER likely received more, because SKINNER is in a relationship with Bone, and SKINNER gets meth from MARTIN daily. SOI #1 stated that SKINNER resides at various hotels throughout Rapid City and will send money to MARTIN's source of methamphetamine.

56.    On October 22, 2019, RCPD Detective Bloomenrader spoke with DCI CI #19-1576 (formerly referred to as SOI #1). The CI provided the location of a storage unit belonging to Edward Lamont MARTIN. The CI again reported that MARTIN has a

storage unit at 2280 Seger Drive, Rapid City, SD. This property is secured with a gate, which can be accessed with a PIN, and the storage unit number is 285. CI verified this is the unit that Carmen DILLON gained access to, but belongs to MARTIN (likely registered to Sara SKINNER). The CI reported DILLON was recently in the Rosebud/Mission, SD area, selling methamphetamine. Once DILLON returns to Rapid City, the CI expects DILLON to pick up a shipment via FedEx or UPS, which will be promptly taken to the storage unit. MARTIN will keep a portion of the methamphetamine with him for sales and store the remainder in the unit.

57. On October 25, 2019, an electronic video surveillance unit (EVSU) was set-up in order to observe the area of the storage units believed to be used by MARTIN and associates in order to store methamphetamine. Throughout the investigation, SA George has monitored the EVSU.

58. On October 31, 2019, SA George and ATF SA Cook conducted an interview with a Source of Information (SOI #2). At that time, SOI #2 identified a black male from Las Vegas, Nevada from whom she obtains methamphetamine. SOI #2 stated that he/she refers to the black male as "D." It should be noted that 'D' is believed to be Edward MARTIN and will be referred to as MARTIN. SOI #2 stated that he/she receives methamphetamine from MARTIN and MARTIN commonly socialized at the Jackpot II Casino or Toby's Casino in Rapid City. SOI #2 stated that approximately two (2) days prior to the interview with SA Cook and SA George, MARTIN contacted SOI #2 and advised that MARTIN would be in Pine Ridge, SD and was believed to be distributing methamphetamine.

26

59.     SOI #2 stated that he/she meets MARTIN at the Econo-Lodge, room #223, located at 625 E. Disk Drive, Rapid City, SD, which is where MARTIN is staying. SOI #2 stated that she/he has not observed MARTIN in possession of methamphetamine, with the exception of the methamphetamine obtained by SOI #2 from MARTIN. SOI #2 stated that MARTIN would provide SOI #2 with methamphetamine and would request sex in exchange. SOI #2 did advise that she/he and MARTIN are in a sexual relationship. SOI #2 stated that MARTIN associates with a Native-American female with long hair, believed to be SKINNER. SOI #2 has observed MARTIN and the Native-American female together at casinos.

60.     On November 4, 2019, Detective Bloomenrader and SA George met with CI #19-1576. At that time, the CI advised that shortly after being released from jail, the CI made contact with SKINNER, who paid for the CI's room at a local motel. The CI stated that he/she and SKINNER travelled to a storage unit located at 2000 Seger Drive, unit #74, Rapid City, SD. The CI stated that the storage unit is to the west of the storage unit complex previously identified by the CI. The CI stated that SKINNER retrieved multiple ounces of methamphetamine from the storage unit. The CI stated that SKINNER was travelling in a red Ford Escape. On this date, the CI advised that SKINNER was staying in the Ramada Inn, room #224 located at 1902 North Lacrosse Street, Rapid City, SD. The CI stated that MARTIN was staying at the Econo-Lodge located at 6215 East Disk Drive, Rapid City, SD. On this date, the CI informed Detective Bloomenrader that MARTIN and/or SKINNER would be receiving a package containing methamphetamine on November 5, 2019. The CI believed the package

27

containing methamphetamine was getting shipped to Rapid City from Las Vegas, NV; however, the CI was not aware of the carrier (FedEx, UPS, USPS, etc.).

61.    On November 5, 2019, law enforcement assisting with the investigation established surveillance at pre-determined locations relevant to the investigation. SKINNER's vehicle, the red Ford Escape bearing South Dakota license plate number 2V7098 was located at the Ramada Inn referenced above.  Law enforcement observed a female, believed to be SKINNER, exit the hotel and enter the Ford Escape.  Law enforcement observed SKINNER travel to the Econo-Lodge.  Shortly thereafter, the vehicle departed the Econo-Lodge and an individual, believed to be MARTIN, was seated in the front passenger seat of the vehicle.

62.    The vehicle travelled to UPS located at 1430 Haines Avenue, Rapid City, SD.  The vehicle parked in front of the store for a short amount of time.  After the vehicle departed the area, RCPD Detective Trevor Tollman made contact with the staff at UPS.  Detective Tollman displayed a digital photograph of MARTIN, which the UPS staff positively identified as MARTIN and indicated just shipped a package from the store.    The UPS staff retrieved the package and a parcel shipping order for the shipment.

63.    It was determined that MARTIN is a frequent customer at the UPS store. MARTIN often ships parcels to 'Christopher James' at 6500 West Charleston Road, #128, Las Vegas, NV.  It was also learned that MARTIN recently entered the UPS store with a pre-sealed padded envelope, approximately 8" x 12" in size.  MARTIN informed the UPS employee that the packaged contained clothing with a declared value of

28

$60.00. MARTIN also indicated the package was going to his son, which led the employee to believe JAMES was MARTIN's son. MARTIN paid $96.59 cash to ship the package with a guaranteed delivery of November 6, 2019 by 10:30am. MARTIN did not add insurance to the package, as the UPS store insures packages with a declared value of up to $100.00. The employee indicated MARTIN normally pays for three (3) to five (5) day ground shipping, and this was the only time they knew of MARTIN paying for guaranteed next day delivery. This particular package would have cost MARTIN approximately $13.99 to ship if MARTIN chosen the three (3) to five (5) day delivery.

64. On November 5, 2019, DCI SA George met with the management of Rapid City Self Storage, who own/manage several self-storage facilities in the Rapid City area. Rapid City Self Storage management provided SA George with a list of tenants for all the storage units that Rapid City Self Storage manages. After reviewing the tenant list, SKINNER is identified as the tenant of the storage unit located at 2000 Seger Drive, unit #S74 and the storage unit located at 2280 Seger Drive, unit #S281.

65. On November 6, 2019, Detective Bloomenrader and DCI SA George met with CI #19-1576. At that time, the CI stated that in the evening hours of November 5, 2019, the CI was with MARTIN and SKINNER at the Ramada Inn, room #224. The CI stated that Kateri PATTON was also in the hotel room. The CI stated that PATTON traded MARTIN at least one (1) firearm in exchange for methamphetamine. The CI stated that MARTIN also brandished a military style rifle, which was being stored under the bed. The CI stated the rifle had a scope and the ammunition for the rifle was being stored in a sock. The CI overheard MARTIN and SKINNER discussing taking the

firearm to the storage unit located at 2000 Seger Drive, unit #74, Rapid City. The CI further overheard MARTIN and SKINNER discussing getting the firearms to California. The CI stated that multiple individuals arrived at SKINNER's hotel room in order to purchase methamphetamine.

66. On November 7, 2019, after reviewing the information from Rapid City Self Storage, an Electronic Video Surveillance Unit (EVSU) was setup to observe the area of the storage units located at 2000 Seger Drive, Rapid City, SD. The EVSU was moved on November 15, 2019 in order to obtain a better view of storage unit #74.

67. After reviewing video of the storage unit located at 2000 Seger Drive, Unit #74, SA George observed a red Ford SUV occupied by a black male, believed to be MARTIN, and a Native American female, believed to be SKINNER, frequent the storage unit on multiple occasions. For a majority of the incidents, the individual believed to be MARTIN enters the storage unit and exits a short amount of time later. Nothing can be observed being taken to or away from the storage unit via the EVSU.

68. On November 7, 2019, SA George spoke with management at the UPS stores in Rapid City, SD. SA George was advised that MARTIN is a frequent customer and began shipping packages from the Rapid City area UPS stores in July, 2019. UPS provided SA George with a list of all packages MARTIN has shipped, which have been identified as the following:

- 7-8-19: A carrier letter to Jonathan Belaphontay in San Bernardino, CA, weighing 13.7oz. Description of contents: Legal Docs and sent next day air for $72.41.
- 7-8-19: A carrier letter to Jesse Stewart in Cary, NC, weighing 4.7oz. Description of contents: Pictures & Card and sent next day air for $42.96.

30

- 7-16-19: A package to Elise Martin in Las Vegas, NV, weighing 2lbs 4.8oz. Description of contents: Clothes and sent UPS ground for $14.92.
- 7-30-19: A carrier letter to Sasha Cook in Concord, NC weighing 1lbs 12.9oz. Description of contents: Books and baby pictures and sent next day air for $78.73.
- 8-2-19: A package to ALC in Miami, FL, weighing 7.2oz. Description of contents: Cell phone and sent UPS ground for $11.86.
- 8-13-19: A package to Sarah Velvick in Las Vegas, NV, weighing 6lbs 15.9oz. Description of contents: Clothes and sent UPS ground for $21.35.
- 8-19-19: A carrier letter to Christopher James in Las Vegas, NV, weighing 1lbs 6.0oz. Description of contents: DOCS and sent next day air for $76.87.
- 8-19-19: A package to Christopher James in Las Vegas, NV, weighing 5lbs 11.3oz. Description of contents: Clothing, Shoes and sent next day air for $125.28.
- 9-26-19: A package to Sasha Cook in Concord, NC, weighing 11.9oz. Description of contents: DOCS and sent next day air for $103.53.
- 10-4-19: A package to Christopher James in Las Vegas, NV, weighing 11.8oz. Description of contents: DOCUMENTS and sent next day air for $123.49.
- 10-9-19: A carrier letter to Jerry Cleveland in San Bernardino, CA, weighing 9.2oz. Description of contents: Card, Necklace and sent next day air for $72.41.
- 10-21-19: A carrier letter to Christopher James in Las Vegas, NV, weighing 12.4oz. Description of contents: DOCS and sent next day air for $104.41.
- 11-5-19: A package to Christopher James in Las Vegas, NV, weighing 5lbs. Description of contents: CLOTHING and sent next day air for $96.59.
- 11-27-19: A carrier letter to Sasha Cook in Concord, NC, weighing 1.7oz. Description of contents: LETTER and sent next day air for $41.44.

69.     On November 8, 2019, CI #19-1576 advised law enforcement that he/she was able to purchase methamphetamine from SKINNER. It was determined that the CI would travel to SKINNER's hotel room located at the Ramada Inn, room #224. When the CI arrived, MARTIN and SKINNER were located in the hotel room. The CI and SKINNER exchanged the prearranged methamphetamine for documented agent cashier funds. While in the hotel room, the CI stated that MARTIN and SKINNER were discussing possible parcels being shipped.

70.     On November 12, 2019, CI #19-1576 advised law enforcement that he/she was able to purchase methamphetamine from SKINNER. Again, the CI was instructed by SKINNER to travel to the Ramada Inn, room #224. When the CI arrived at the Ramada Inn, the CI made contact with SKINNER. The CI provided SKINNER with documented agent cashier funds in exchange for methamphetamine. In addition, the CI discussed with SKINNER the cost of one (1) pound of methamphetamine. SKINNER stated that would need to be discussed with MARTIN.

71.     On November 20, 2019, law enforcement were conducting a controlled purchase operation regarding a separate investigation in Rapid City, SD. During the controlled purchase operation, the CI was notified that the methamphetamine would arrive at the controlled purchase location in approximately one (1) hour. Ultimately, a red Ford Escape bearing South Dakota license plate number 2V7098 arrived near the location of the controlled purchase operation. Law enforcement observed three (3) individuals inside the vehicle. MARTIN and SKINNER were positively identified by law enforcement to be in the vehicle. The other individual was an unknown Native American male. Shortly after arrival, the Native American male exited the vehicle and approached the controlled purchase location. The CI then received a clear plastic baggie containing one (1) ounce of suspected methamphetamine, which was provided to law enforcement.

72.     On November 27, 2019, the Pennington County Sheriff's Office (PCSO) made contact with the occupants of a vehicle following a driving complaint. The vehicle was found parked at the residence located at 723 Myrtle Avenue, Apartment #1, Rapid

32

City, SD, which is the residence of Keeler STANDS. Law enforcement knocked on the door of the residence and made contact with Veronica Jeffords. When Jeffords opened the door to the residence, law enforcement detected the odor of marijuana emulating from inside the residence. Shortly thereafter, law enforcement made contact with Jefford's mother, Betty, who admitted to driving the vehicle at the time of the driving complaint. Betty provided to law enforcement that she has been taking care of Jefford's child for the past six (6) months due to Jefford's drug use.

73. While speaking with Betty, STANDS and Jeffords exited the residence located at 723 Myrtle Avenue, Apartment #1, Rapid City, SD. STANDS informed law enforcement that the above identified address was STANDS' primary residence. Law enforcement informed STANDS that the odor of marijuana was detected coming from STANDS' residence each time the door was opened. STANDS stated that the neighbors often smoke marijuana at the odor was coming from a separate residence; however, it was later learned by law enforcement that the neighboring apartment was vacant as the neighbors recently moved out. STANDS denied the presence of marijuana or methamphetamine in the residence.

74. On December 4, 2019, CI #19-1576 informed law enforcement that SKINNER and MARTIN were discussing moving to an apartment and may have put a deposit down for a permanent residence. The location of the residence was not known to the CI at that time.

75. On December 7, 2019, SA George observed SKINNER and an unknown male, via the EVSU, arrive at the storage unit located at 2000 Seger Drive, unit #73,

Rapid City, SD.   SKINNER and the unknown male loaded multiple items into SKINNER's vehicle identified as the red Ford Escape bearing South Dakota license plate number 2V7098.   After loading multiple items into the vehicle, SKINNER and the unknown male travelled to the Jackpot Casino and then to a residence located at 706 Taylor Avenue, Apartment # 2 Rapid City, SD 57701.   ATF SA Cook and DCI SA George conducted surveillance of the residence.   At that time, SKINNER's vehicle was observed parked at the residence.   SKINNER and the unknown male were observed unloading items from the vehicle and placing the items within the residence.   Cleaning supplies and a vacuum was also observed.   It appeared as though SKINNER was moving into the residence.

76.   Beginning on December 7, 2019 and continuing until present, through the use of physical surveillance and electronic monitoring devices, SKINNER has been commonly frequenting the residence at 706 Taylor Avenue, Apartment #2, Rapid City, SD 57701.   Based on the time of the day and frequency of activity at the above identified residence, it is believed that SKINNER does reside at the residence.   SKINNER is also often observed travelling from the above identified residence to the Econo-Lodge located at 625 East Disk Drive, Rapid City, SD 57701, which is where MARTIN is currently residing.   Vehicles registered to unknown individuals have also been observed at the residence for short periods of time.

77.   On December 11, 2019, DCI SA BJ George obtained a guest list and room assignment for the Econo-Lodge hotel located at 625 East Disk Drive, Rapid City, SD 57701.   It was determined that MARTIN is currently staying in room number

34

326 at the above identified hotel.  MARTIN has a scheduled check-out date of December 12, 2019.

78.    On December 11, 2019, SA George contacted Rapid City Self Storage and requested information regarding the storage units belonging to Sara SKINNER.  At that time, SA George was advised that SKINNER's monthly rent was currently due for the storage units located at 2280 Seger Drive, Unit #281 and 2000 Seger Drive, Unit #74, Rapid City, SD 57701.  SA George was further advised that Rapid City Self Storage management contacted SKINNER who advised that she wished to maintain possession of both storage units and would pay the monthly rent.  Further, SKINNER provided an updated mailing address of 706 Taylor Avenue, Apartment #2, Rapid City, SD 57701.

*Requests*

I request authorization to execute this search warrant without providing prior notice, i.e. "no knock", based on the following circumstances: because Skinner and Martin are known to associate with firearms and have criminal histories including assault arrests, law enforcement knocking and announcing their presence under the particular circumstances would threaten officer safety, be futile, or inhibit the investigation of crime.

I request authorization to execute this search warrant at any time in the day or night based on the following circumstances: objects to be seized are in danger of imminent removal or destruction and persons to be seized are likely to flee.

35

*Request to Seal*

I request an order sealing this case until further order of the Court, in that this search is being conducted as part of an ongoing federal criminal investigation and contains information from persons cooperating with law enforcement. Disclosure of information contained in the documents incorporated in this search and filed with the Court could seriously jeopardize this ongoing investigation.

## **CONCLUSION**

1.      I submit that based on the facts set forth in this affidavit, there is probable cause to believe the locations described in Attachment A contains evidence, fruits, and or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846. Therefore, I request permission to search the premises in Attachment A for the evidence, fruits, and instrumentalities identified with particularity in Attachment B.

2.      Based on the foregoing, I request that the Court issue the proposed search warrant.

Riley J. Cook, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to before me and:  ☐ signed in my presence.
                         ☒ submitted, attested to, and acknowledged by reliable electronic means.

        this 11th day of December, 2019.

Daneta Wollmann
United States Magistrate